# EXHIBIT A

SUMMONS IN A CIVIL ACTION   COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV17883684 | D1 SPS | 32870605 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

**RECEIVED**

**JUL 28 2017**

DCG Legal Services
Personal Service

| LUBRIZOL ADVANCED MATERIALS, INC. | PLAINTIFF |
|---|---|
| VS | |
| NATIONAL UNION FIRE INSURANCE COMPANY | DEFENDANT |

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.
175 WATER STREET, 18TH FLOOR
NEW YORK NY 10038

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to
answer the complaint within 28 days after service
of this summons upon you, exclusive of the day of
service.

Said answer is required to be served on:

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left).



**Plaintiff's Attorney**

JULIE A HARRIS
THE LUBRIZOL CORPORATION

29400 LAKELAND BOULEVARD
WICKLIFFE, OH 44092-0000

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

Case has been assigned to Judge:

CASSANDRA COLLIER-WILLIAMS
Do not contact judge. Judge's name is given for
attorney's reference only.



NAILAH K. BYRD
Clerk of the Court of Common Pleas



| DATE SENT | | By |
|---|---|---|
| Jul 28, 2017 | | Deputy |

COMPLAINT FILED   07/27/2017

Return on Service Of Writ
On the _____ day of _____, 20 ____
I served this Writ together with a copy of the complaint herein on the within named defendant:

_____

as follows: _____

_____

Subscribed and sworn to before me, a           By_____
          Notary Public
This _____ day of _____, 20 ____

_____

CMSN130

AIG Property Casualty
Claims Legal

JUL 31 2017

**RECEIVED**



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

**Court of Common Pleas**

**New Case Electronically Filed:**
**July 27, 2017 16:12**

By: JULIE A. HARRIS 0065246

Confirmation Nbr. 1130748

LUBRIZOL ADVANCED MATERIALS, INC.                    CV 17 883684

    vs.

NATIONAL UNION FIRE INSURANCE COMPANY          **Judge:**  CASSANDRA COLLIER-WILLIAMS

Pages Filed:  62

A
I
G

O
L
U
3
:
S
e
s
s

1

7
/
3
1
/
2
0
1
7

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| LUBRIZOL ADVANCED MATERIALS, INC. ) <br> 9911 Brecksville Road ) <br> Brecksville, Ohio 44141, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NATIONAL UNION FIRE INSURANCE ) <br> COMPANY OF PITTSBURGH, PA. ) <br> 175 Water Street, 18th Floor ) <br> New York, New York 10038 ) <br> ) <br> c/o its Registered Agent: ) <br> Corporation Service Company ) <br> 2595 Interstate Drive, Suite 103 ) <br> Harrisburg, Pennsylvania 17110, ) <br> ) <br>     Defendant. ) | CASE NO. <br><br> JUDGE <br><br><br><br><br><br> **COMPLAINT FOR:** <br><br> **(1) BREACH OF CONTRACT; and** <br> **(2) DECLARATORY JUDGMENT.** <br><br><br><br> *Jury Demand Endorsed Hereon* |

Plaintiff, Lubrizol Advanced Materials, Inc. (hereinafter "LZAM"), for its complaint against Defendant, National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter "National Union"), alleges as follows:

### NATURE OF THE CASE

1.    This is an action for breach of contract and declaratory judgment by LZAM against National Union.

2.    National Union sold and issued an umbrella and excess liability insurance policy to LZAM's predecessor PMD Group, Inc. (formerly known also as Noveon, Inc.), which policy provided commercial liability insurance coverage, including insurance coverage for product liability claims made against LZAM, with limits of $50 million per occurrence.

A
I
G

O
L
0
3
:
S
a
s
s

1

7
/
3
1
/
2
0
1
7

3.     This action arises from a dispute between LZAM and National Union over National Union's obligation to pay or indemnify LZAM for defense costs and damages LZAM incurred as a result of manufacturing an allegedly defective product and defending and settling claims made, and suits brought, against LZAM over those allegations.

## THE PARTIES

4.     LZAM is a corporation authorized to do and doing business in the State of Ohio, with its headquarters located in Brecksville, Ohio.

5.     National Union is an insurance company that provides various lines of insurance, including commercial liability insurance, to residents of the State of Ohio.

6.     National Union is licensed to do business in the State of Ohio and, at the time during which the facts of this case occurred, was engaged in business operations in the State of Ohio.

## JURISDICTION AND VENUE

7.     Pursuant to Ohio Revised Code § 2307.382, this Court has jurisdiction over the parties because, within the time period relevant to the claims asserted herein, National Union was transacting business in Ohio and/or contracted to insure businesses that operate in Ohio and LZAM was a resident of the State of Ohio.

8.     This Court has jurisdiction over this action pursuant to Ohio Revised Code §§ 2305.01 and 2721.02-2721.04.

9.     National Union is amenable to service of process by this Court pursuant to Ohio Rules of Civil Procedure 4.1-4.3, and this Court constitutionally may exercise jurisdiction over it.

10.     Venue is proper in this Court, pursuant to Ohio Rule of Civil Procedure 3(B)(3), (7), and/or (12).

A
I
G

O
L
0
3
:
6
9
6
s

1

7
/
3
1
/
2
0
1
7

### ALLEGATIONS COMMON TO ALL COUNTS

11.     In December 2001, AT Plastics Inc. ("ATP") entered into an asset purchase agreement with LZAM where LZAM purchased from ATP a resin and catalyst product line intended to make cross-linked polyethylene ("PEX") pipe. In 2006, ATP was sued by IPEX, Inc. ("IPEX") in the Superior Court of Justice in Ontario, Canada. IPEX, a pipe manufacturer, alleged that ATP sold IPEX a defective resin and catalyst product.

12.     On August 29, 2008, ATP filed an action against LZAM, and its Canadian subsidiary Lubrizol Materials Canada, Inc., in the Superior Court of Justice in Ontario, Canada. That action sought contribution and indemnity from LZAM for monies ATP is ordered to pay IPEX, Inc. ("IPEX") for losses attributable to product sold to IPEX after LZAM purchased the product line from ATP.  In 2011, ATP and LZAM discontinued this action pursuant to a Tolling Agreement.

13.     In October of 2008, IPEX filed an action against LZAM, and its Canadian subsidiary Lubrizol Materials Canada, Inc., in the Superior Court of Justice in Ontario, Canada. That action complained about LZAM's manufacture and sale to IPEX of product consisting of resin, catalyst, and a processing aid that IPEX alleged was defective (the "IPEX Action").

14.     The IPEX Action involved composite pipe, called Kitec® Pipe, that IPEX had manufactured incorporating the LZAM product.  Specifically, IPEX manufactured Kitec® Pipe using a cross-linked polyethylene, or "PEX," that was formed by mixing together the resin, catalyst, and processing aid which IPEX purchased from LZAM.

15.     According to IPEX, it received complaints and claims from a number of purchasers, contractors, and end users of its Kitec® Pipe alleging that the Kitec® Pipe had either failed or malfunctioned.

16.     IPEX alleged that any failure or malfunction of the Kitec® Pipe was attributable to the allegedly defective product that LZAM, and its Canadian subsidiary, had supplied to IPEX that was incorporated into the Kitec® Pipe.

17.     LZAM sold the allegedly defective product to IPEX from December 22, 2001 and throughout 2002, which was during National Union policy period, as further described herein.

18.     On April 10, 2017, ATP revived its action for contribution and indemnity against LZAM as a third party claim in the pending action between ATP and IPEX in the Superior Court of Justice in Ontario, Canada.  On July 13, 2017, ATP filed an Amended Third Party Claim (the "AT Plastics Action").

### THE POLICY

19.     National Union issued excess insurance policy no. BE 7409379 to PMD Group, Inc. (hereinafter, the "Policy") for the period of time from February 28, 2001, through February 28, 2002, and it provided up to $50 million in umbrella and excess insurance coverage, with the coverage being subject to a Retained Limit, which is defined in the policy as $1 million for claims covered by the underlying policy and $10,000 for claims not covered by the underlying policy.  A copy of the National Union Policy is attached hereto as Exhibit A.

20.     In or around 2001, PMD Group, Inc. changed its name to Noveon, Inc.   In 2007, Lubrizol changed the name of Noveon, Inc. to LZAM.   LZAM is an Insured under the Policy.

21.     The Policy provides that it will "pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay … by reason of liability … because of … Property Damage … that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world."

22.     The Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in ... Property Damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence."

23.     The Policy defines the "Products-Completed Operations Hazard" to include "all ... Property Damage ... arising out of Your Product ..." and "Property Damage" to include "Physical Injury to tangible property ...."

24.     The Policy provides under the heading "When Loss Is Payable" that National Union will pay once "the Insured ... is obligated to pay the Retained Limit."

25.     LZAM has paid an amount in excess of the Retained Limit to defend and settle the IPEX Action and defend the ATP Action.

26.     The allegations in the IPEX Action were of an "Occurrence" as that term is defined in the Policy, resulting in "Property Damage" as that term is defined in the Policy.

27.     LZAM has made a claim for the amounts that National Union was required to pay under the terms of the Policy, but National Union has refused to acknowledge and honor its full obligations thereunder.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

28.     LZAM repeats and realleges each and every allegation contained in paragraphs 1 through 27, as if fully rewritten herein.

29.     The Policy was issued by National Union to PMD Group, Inc., LZAM's predecessor, and all premiums have been paid for the Policy and all material conditions and/or obligations of the Insured have been fulfilled.

30.    The Policy obligated National Union to defend or otherwise pay defense costs and to make payments to or on behalf of LZAM on claims submitted, such as the claims at issue in the IPEX Action and ATP Action.

31.    National Union has failed to acknowledge and honor fully its obligations under the Policy in regard to the IPEX Action and ATP Action.

32.    National Union's failure to acknowledge and honor its full obligations to LZAM under the Policy is a breach of the Policy, which has caused harm to LZAM.

**SECOND CLAIM FOR RELIEF**
***(Declaratory Relief)***

33.    LZAM repeats and realleges each and every allegation contained in paragraphs 1 through 32 as if fully rewritten herein.

34.    The Policy requires that National Union make payments to or on behalf of LZAM according to the terms of the Policy for the amounts incurred by LZAM in excess of the Retained Limit as a result of the Occurrence of manufacturing the allegedly defective product.

35.    National Union has refused to acknowledge and honor its full obligations under the Policy to make the required payments to or on behalf of LZAM.

36.    An actual and justiciable controversy presently exists between LZAM and National Union concerning the extent of National Union's full obligations under the Policy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, LZAM, respectfully requests that the Court enter judgment in its favor and against Defendant National Union Fire Insurance Company of Pittsburgh, Pa.:

1.    On the First Claim for Relief, an award of compensatory damages to Plaintiff in the amount of any defense costs and damages incurred by Plaintiff in regard to the IPEX Action and ATP Action in excess of the Retained Limit, plus interest;

2.     On the Second Claim for Relief, for a determination and declaration of the rights of Plaintiff and the obligations of Defendant under the Policy, including but not limited to the full amount of Defendant's defense and indemnity obligations to Plaintiff;

3.     For Plaintiff's costs and attorneys' fees incurred in prosecuting this action;

4.     For interest upon all amounts due from Defendant to Plaintiff, including the amounts due for the attorneys' fees and costs of this action; and

5.     For any other relief that this Court deems just and proper.

Respectfully submitted,

s/ *Julie A. Harris*

JULIE A. HARRIS (0065246)
NADA G. FADDOUL (0082718)
The Lubrizol Corporation
29400 Lakeland Boulevard
Wickliffe, Ohio 44092
Telephone: (440) 347-2302
Facsimile: (440) 347-2828
Email: julie.harris@lubrizol.com
        nada.faddoul@lubrizol.com

*Attorneys for Plaintiff*
*Lubrizol Advanced Materials, Inc.*

A
I
G

O
L
0
3
:
S
e
s
s
1

7
/
3
1
/
2
0
1
7

## JURY DEMAND

Pursuant to Rule 38 of the Ohio Rules of Civil Procedure, Plaintiff, Lubrizol Advanced

Materials, Inc., hereby requests a jury for all issues permitted to be tried under law.

Respectfully submitted,

s/ *Julie A. Harris*

JULIE A. HARRIS (0065246)
NADA G. FADDOUL (0082718)
The Lubrizol Corporation
29400 Lakeland Boulevard
Wickliffe, Ohio 44092
Telephone: (440) 347-2302
Facsimile: (440) 347-2828
Email: julie.harris@lubrizol.com
         nada.faddoul@lubrizol.com

*Attorneys for Plaintiff*
*Lubrizol Advanced Materials, Inc.*

A
I
G

O
L
0
3
:
S
e
s
s

1
7
/
3
1
/
2
0
1
7

 **COMMERCIAL UMBRELLA DECLARATIONS**

# EXHIBIT A

## NATIONAL UNION FIRE INSURANCE COMPANY
## OF PITTSBURGH, PA.

A CAPITAL STOCK COMPANY

ADMINISTRATIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270-0150

**POLICY NUMBER:** BE 7409379

**RENEWAL OF:** NEW

**PRODUCER NAME:** MARSH GLOBAL BROKING, INC.

**ADDRESS:** 1166 AVE OF AMERICAS, 40TH FLR.
NEW YORK, NY 10036

**ITEM 1.** **NAMED INSURED:** PMD GROUP INC.

**ADDRESS:** 9911 BRECKSVILLE ROAD
BRECKSVILLE, OH 44141-3289

**ITEM 2.** **POLICY PERIOD: FROM:** February 28, 2001 **TO:** February 28, 2002
AT 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.** **LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

| | | |
|---|---|---|
| A. | $50,000,000 | Each Occurrence |
| B. | $50,000,000 | General Aggregate (in accordance with Section III, Limits of Insurance) |
| C. | $50,000,000 | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D. | $10,000 | Self Insured Retention |

**ITEM 4.** **PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE / PER | ADVANCE PREMIUM | MINIMUM PREMIUM |
|---|---|---|---|
| N/A | FLAT | $485,000 | $485,000 |

**ITEM 5.** **ENDORSEMENTS ATTACHED:** SEE ATTACHED SCHEDULE

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

COUNTERSIGNED _____ BY _____

DATE AUTHORIZED REPRESENTATIVE

57696 (6/93)

FORMS SCHEDULE

**Named Insured:** PMD GROUP INC.
**Policy Number:** BE  7409379
**Effective 12:01 AM:** February 28, 2001

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | COMM UMB DEC NAT UNION OF PA | 57696 | (06/93) |
| | COMM UMB POL FORM | 57697 | (06/93) |
| 1 | OHIO UNINSURED MOTORISTS COVERAGE | 59300 | (05/00) |
| 2 | SCHEDULE OF UNDERLYING INS | MNSCPT | (03/01) |
| 3 | EMPLOYEE BENEFITS LIABILITY | MNSCPT | (03/01) |
| 4 | PROFESSIONAL LIABILITY EXCLUSI | MNSCPT | (03/01) |
| 5 | NAMED PERIL & TIME ELEMENT | MNSCPT | (03/01) |
| 6 | FOREIGN LIABILITY FOLLOW-FORM ENDR | 57710 | (06/93) |
| 7 | MARINE LIAB FOLLOW-FORM | 60466 | (05/94) |
| 8 | GENERAL AGGREGATE AMENDATORY | 57724 | (06/93) |
| 9 | FLORIDA UNINSURED MOTORISTS COV | 62411 | (04/95) |
| 11 | LA UNINSURED/UNDERINSURED MOTORIST BODILY INJURY C | 62596 | (06/98) |
| 12 | NH UNINSURED MOTORISTS COV | 62413 | (04/95) |
| 13 | TENN UNINSURED MOTORISTS COV | 62452 | (04/95) |
| 14 | VT UNINSURED MOTORISTS COVERAGE | 59264 | (05/94) |
| 15 | CRISIS RESPONSE AND EXCESS CASUALTY CRISIS FUND | 74641 | (12/99) |
| 16 | AIRPORT/HELIPORT LIAB EXCL | 60422 | (05/94) |
| 17 | LEAD EXCL | 61718 | (12/94) |
| 18 | SILICA EXCL | 66687 | (12/96) |
| 19 | OHIO AMENDATORY | 59124 | (11/93) |

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

CIFMSC

ENDORSEMENT No. 1

**This endorsement, effective 12:01 AM:** February 28, 2001

**Forms a part of policy no.:** BE    7409379

**Issued to:**  PMD GROUP INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH.PA.

<u>OHIO UNINSURED MOTORISTS COVERAGE</u>

This endorsement applies to a covered **auto** licensed or principally garaged in Ohio.

I.   In accordance with state law, the undersigned **Named Insured** on behalf of all "insureds" in this policy acknowledges that it has been offered the opportunity to:

1.   Elect a limit of Uninsured Motorist coverage that is equal to the Limits of Insurance on this policy.

2.   Elect a limit of Uninsured Motorist coverage that is lower than the Limits of Insurance on this policy.

3.   Completely reject Uninsured Motorist coverage on this policy.

II.   On behalf of the **Named Insured** shown in Item 1 of  the Declarations and all other "insureds" in this policy, I hereby indicate my choice below. (1, 2 or 3)

In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

* 1.        Coverage desired at a limit equal to the Limits of Insurance.

* 2.        Coverage desired at a limit lower than the Limits of Insurance as indicated below:

LIMIT OPTIONS:     $

3.        Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage**. This rejection shall be binding upon every "insured" and shall apply to this policy and to all renewal or policy replacements.

## * To Purchase UM/UIM, the Premium Charge will be $.

For any change in coverage or limit, please notify us or your agent in writing.

SIGNATURE OF APPLICANT OR **NAMED INSURED**/DATE

**Coverage**

1.   We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of:

a.   An "uninsured motor vehicle" as defined in Definition 5.a.,b. and c. because of **Bodily Injury or Property Damage** sustained by the "insured" and caused by an **Occurrence**. b. An "underinsured motor vehicle" as defined in Definition 30.7 because of **Bodily Injury** or **Property Damage** sustained by any "insured".

59300 (5/00)                    Page 1 of 4

A
I
G

O
L
0
3
:
s
s
s

1

7
/
3
1
/
2
0
1
7

The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2.  We will pay under this coverage only if a. and b. below applies:

   a.  The limits of any applicable liability bonds or policies have been exhausted by judgments or payments; or

   b.  A tentative settlement has been made between an "insured" and the insurer of the vehicle described in paragraph b. of the definition of "uninsured motor vehicle" and we:

      (1)  Have been given prompt written notice of such settlement; and

      (2)  Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3.  Any judgment for damages arising out of a suit brought without our written consent is not binding upon us.

**Exclusions**

Section V, Exclusions, Exclusion C is deleted in its entirety and replaced by the following:

C.  Any obligation of the "insured" under a "No Fault" law.

The following additional exclusions apply:

This insurance does not apply to:

1.  Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle which is an "underinsured motor vehicle."

2.  The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3.  Any "insured" using a vehicle without a reasonable belief that the person is entitled to do so.

4.  "**Bodily Injury**" sustained by:

   a.  An individual **Named Insured** while "occupying" or when struck by any vehicle owned by that **Named Insured** that is not a covered **auto** for Uninsured Motorists Coverage under this Coverage Form;

   b.  Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered **auto** for Uninsured Motorists Coverage under this Coverage Form; or

   c.  Any "family member" while "occupying" or when struck by any vehicle owned by the **Named Insured** that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

5.  Anyone occupying or using an **auto**, which is not, a covered **auto** while used outside the scope of the **Named Insured's** business. However, this exclusion does not apply to an individual **Named Insured** or any "family member".

**Definitions**

As used in this endorsement:

1.  "Family member" means a person related to an individual **Named Insured** by blood, marriage or adoption who is a resident of such **Named Insured's** household, including a ward or foster child.

Electronically Filed 07/27/2013 16:12:11 / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

2. "Insured" means:

If the **Named Insured** is designated in the Declarations as:

a. An individual, then only the following are "insureds":

(1) The **Named Insured** and any "family members";

(2) Anyone else occupying a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, "loss" or destruction;

(3) Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another "insured".

b. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

(1) Anyone occupying a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, "loss" or destruction;

(2) Anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another "insured".

3. "Loss" means direct and accidental loss or damage.

4. "Occupying" means in, upon, getting in, on, out or off.

5. "Uninsured motor vehicle" means a land motor vehicle or trailer:

a. For which no liability bond or policy at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged;

b. Which is an underinsured motor vehicle. An "underinsured motor vehicle" means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged but their limits are less than the Limit of Insurance of this coverage;

c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

d. That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

(1) Hit an **"insured"**, a covered **auto** or a vehicle an "insured" is "occupying"; or

(2) Cause **Bodily Injury** to an "insured" without hitting an "insured"; a covered **auto** or a vehicle an "insured" is "occupying".

The facts of the **Occurrence** or intentional act must be proved by independent corroborative evidence, other than the testimony of the "insured" making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law,



b.  Designed for use mainly off public roads while not on public roads.

c.  Owned by or furnished or available for the **Named Insured's** regular use or that of any "family member", if the **Named Insured** is an individual.

d.  Owned by any governmental unit or agency, unless the owner or operator of the "uninsured motor vehicle" has:

    (1)  An immunity under the Ohio Political Subdivision Tort Liability Law; or

    (2)  A diplomatic immunity.

All other terms and conditions of this policy remain unchanged.

Authorized Representative
or Countersignature (in States Where Applicable)

59300 (5/00)                     Page 4 of 4

A
I
G

O
L
0
3
:
S
u
s
s

1

7
/
3
1
/
2
0
1
7

## ENDORSEMENT No. 2

**This endorsement, effective 12:01 AM:** February 28, 2001

**Forms a part of policy no.:** BE  7409379

**Issued to:** PMD GROUP INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### SCHEDULE OF UNDERLYING INSURANCE

| Type Of Coverage | Insurer<br>Policy Number<br>Policy Period | Limits Of Liability |
|---|---|---|
| Commercial General<br>Liability | TBD<br>TBD<br>2/28/01 - 2/28/02 | $1,000,000 Each Occurrence<br>$4,000,000 General Aggregate<br>$4,000,000 Products/Completed Ops Agg<br>$1,000,000 PI & AI Each Occurrence<br>$1,000,000 Employee Benefits Liability<br>    Each Claim |
| Automobile Liability | TBD<br>TBD<br>2/28/01 - 2/28/02 | $1,000,000 Each Accident |
| Employer's Liability | TBD<br>TBD<br>2/28/01 2/28/02 | $1,000,000 BI by Accident<br>$1,000,000 BI by Disease Each Employee<br>$1,000,000 BI by Disease Policy Aggregate |
| Foreign Liability | TBD<br>TBD<br>2/28/01 - 2/28/02 | $2,000,000 Each Occurrence<br>$4,000,000 Aggregate Where Applicable |

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT No. 3

**This endorsement, effective 12:01 AM:** February 28, 2001

**Forms a part of policy no.:** BE   7409379

**Issued to:** PMD GROUP INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### EMPLOYEE BENEFITS LIABILITY FOLLOW-FORM ENDORSEMENT

*This insurance does not apply  for those sums the  Insured shall become legally  obligated to pay as damages because of any claim made against the Insured due to any Wrongful Act of the Insured, or any other person for whose acts  the Insured is legally liable,  in the Administration of  the Insured's Employee Benefits Programs.*

However, if insurance for such damages is provided by a policy listed in  the Schedule of Underlying Insurance:

  1. This exclusion shall not apply, and

  2. Except with  respect to  limits of  liability, retentions, deductibles,  cancellation/non-renewal,  duty to defend and premium,  this  insurance shall  follow the terms, conditions, and  exclusions of  the policy(ies) listed  in  the Schedule of  Underlying Insurance, and

  3. The insurance  provided by our policy  will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

A
I
G
0
L
0
3
:
S
e
s
1
7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 4

**This endorsement, effective 12:01 AM:** February 28, 2001

**Forms a part of policy no.:** BE   7409379

**Issued to:** PMD GROUP INC.

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### PROFESSIONAL LIABILITY EXCLUSION

*This insurance does not apply to any damages including but not limited to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the Insured or any person for whom the Insured is legally responsible*



All other terms and conditions of this policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

A
I
G

O
L
0
3
:
S
e
s

1
7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:  February 28, 2001

Forms a part of policy no.:  BE    7409379

Issued to:  PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT

Exclusion M. of this policy is hereby deleted in its entirety and replaced by the following:

This insurance does not apply to:

1.  Bodily Injury, Property Damage or Personal Injury arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world,

2.  Any loss, cost or expense arising out of any governmental direction or request that we, the Insured or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants, or

3.  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

However, this exclusion does not apply to Bodily Injury, Property Damage or Personal Injury arising out of:

1.  Any discharge, dispersal, seepage, migration, release or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot and civil commotion, flood, earthquake, collision, or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage,

2.  The Products - Completed Operations Hazard, or

3.  Any discharge, dispersal, seepage, migration, release or escape of pollutants that meets all of the following conditions:



ENDORSEMENT No. 5     (Continued)

This endorsement, effective 12:01 AM:  February 28, 2001

Forms a part of policy no.:  BE    7409379

Issued to:  PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

a.  It was accidental and neither expected nor intended by the Named Insured. This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the Insured to mitigate or avoid a situation where substantial third party Bodily Injury, Property Damage or Personal Injury could occur, and

b.  It was demonstrable as having commenced on a specific date during the term of this policy, and

c.  Its commencement became known to the Named Insured within twenty (20) calendar days and was further reported to the Risk Management Department within a reasonable time frame, and

d.  Its commencement was reported in writing to us within eighty (80) calendar days of becoming known to the Risk Management Department, and

e.  Reasonable effort was expended by the Named Insured to terminate the situation as soon as conditions permitted.

However, nothing contained in this provision 3. shall operate to provide any coverage with respect to:

a.  Any site or location principally used by the Insured, or by others on the Insured's behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material,

b.  Any fines or penalties,

c.  Any clean-up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion c. shall not serve to deny coverage for third party clean-up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority.

d.  Acid rain,



A
I
G

O
L
0
3
:
5
e
s
s

1

7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 5    (Continued)

This endorsement, effective 12:01 AM:  February 28, 2001

Forms a part of policy no.:  BE    7409379

Issued to:  PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

  e.  Clean-up, removal, containment, treatment, detoxification or neutralization of
      pollutants situated on premises the Insured owns, rents or occupies at the time
      of the actual discharge, dispersal, seepage, migration, release or escape of said
      pollutants, or

It is further agreed that solely as respects any coverage granted by this endorsement, the following
shall apply to any occurrence which is covered by this policy but not covered by the underlying
policies listed in the Schedule of Underlying Insurance or any other underlying insurance providing
coverage to the Insured due to an exclusion(s) contained therein:

  1.  The Self-Insured Retention in Item 3. D. of the Declarations is amended to
      $2,000,000.

  2.  In Section II, Defense, provision A. 2. is hereby deleted in its entirety, and

  3.  We will not be obligated to assume charge of the investigation, settlement or
      defense of any claim made, suit brought or proceeding instituted against the
      Insured. We will, however, have the right and shall be given the opportunity to
      participate in the defense and trial of any claims, suits or proceedings relative to any
      Occurrence which, in our opinion, may create liability on our part under the terms of
      this policy. If we exercise such right, we will do so at our own expense.

It is further agreed that in the event of a disagreement as to the interpretation of this endorsement,
the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators.
Within thirty (30) days of a written request for arbitration by either you or us, each party will
choose an arbitrator. If the two (2) arbitrators are unable to agree within one (1) month upon the
third arbitrator, such arbitrator shall at the request of either party be selected by the American
Arbitration Association in accordance with its rules and procedures.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and
place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not
be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of
the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of
at least two (2) of the three (3) panel members shall be binding and final, and not subject to appeal
except for grounds of fraud and gross misconduct by the arbitrators. The award will be issued
within thirty (30) days of the close of the hearings. Each party shall bear the expenses of its
designated arbitrator and shall jointly and equally share with the other the expense of the third
arbitrator and of the arbitration.



ENDORSEMENT No. 5 (Continued)

This endorsement, effective 12:01 AM: February 28, 2001

Forms a part of policy no.: BE 7409379

Issued to: PMD GROUP INC.

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

The arbitration proceedings shall take place in the state mentioned in the Declarations. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

All other terms and conditions of this policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT No. 6

**This endorsement, effective 12:01 AM:** February 28, 2001

**Forms a part of policy no.:** BE  7409379

**Issued to:** *PMD GROUP INC.*

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.     This exclusion shall not apply; and

2.     The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

57710 (6/93)

A
I
G

O
L
O
3
:
S
e
s
s

1

7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 7

This endorsement, effective 12:01 AM:  February 28, 2001

Forms a part of policy no.:  BE     7409379

Issued to:  PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### MARINE LIABILITY FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of any marine liability which includes but is not limited to the following:

| | |
|---|---|
| Charterers Liability | Terminal Operation Liability |
| Safe Berth Legal Liability | Wharfingers Liability |
| Stevedores Liability | Protection and Indemnity including Collision |
| Towers Liability | Ship Builders Liability |
| Jones Act Coverage | U.S. Longshoreman and Harbor Workers |
| Ship Repairers Legal Liability | |

It is further agreed that this insurance does not apply to:

1.  **Bodily Injury** or **Property Damage** arising out of the maintenance. fueling, loading or unloading of any watercraft or **Property Damage** to any watercraft in the **Insured's** care. custody or control;

2.  **Bodily Injury** to passengers or **Property Damage** to the property of passengers;

3.  **Property Damage** to any dock, pier, harbor, bridge. buoy, lighthouse, breakwater structure, beacon, cable or to any fixed or movable object or property for which the **Insured** may be held liable; or

4.  The cost or expense of, or incidental to. the removal of the wreck of any vessel.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

Electronically Filed 07/27/2017 16:12 /  / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

AUTHORIZED REPRESENTATIVE



60466 (5/94)

A
I
G

O
L
0
3
:
8
e
s
s

1

7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 8

**This endorsement, effective 12:01 AM:**  February 28, 2001

**Forms a part of policy no.: BE**    7409379

**Issued to:**   PMD GROUP INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### GENERAL AGGREGATE AMENDATORY ENDORSEMENT

Our General Aggregate Limit of Insurance shown in Item 3B of the Declarations applies separately in excess of each General Aggregate limit provided by the policy or policies listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

Electronically Filed 07/27/2017 16:12 /  / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

AUTHORIZED REPRESENTATIVE

57724 (6/93)

A
I
G

O
L
0
3
:
s
e
s
s

1

7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 9

*This endorsement, effective 12:01 AM:* February 28, 2001

Forms a part of policy no.:  BE    7409379

Issued to:  PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## FLORIDA UNINSURED MOTORISTS COVERAGE*

### OPTIONS FORM

YOU MAY BE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU, OR YOU ARE PURCHASING UNINSURED MOTORIST LIMITS LESS THAN YOUR **BODILY INJURY** LIABILITY LIMITS WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.

*Uninsured Motorist coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of* **Bodily Injury** *or death resulting therefrom. Such benefits may include payments for certain medical expenses, lost wages, and pain and suffering, subject to limitations and conditions contained in the policy. For the purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the* **Bodily Injury** *limits are less than your damages.*

Florida law requires that automobile liability policies include Uninsured Motorist coverage at limits equal to the **Bodily Injury** Liability limits in your policy unless you select a lower limit offered by the Company, or reject Uninsured Motorist entirely.

Please indicate whether you desire to entirely reject Uninsured Motorist coverage, to choose this coverage at limits lower than the **Bodily Injury** Liability limits of your policy or to choose this coverage at the **Bodily Injury** Liability limits of your policy:

        **a.**    Uninsured Motorist coverage is hereby rejected.

        **b.**    Uninsured Motorist coverage with limits of
            which are lower than my **Bodily Injury** Liability limits, has been selected.

        **c.**    Uninsured Motorist coverage at my **Bodily Injury** Liability limits has been
            selected.

Please note that in order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

You understand and agree that selection of one of the above options applies to your liability insurance policy and future renewals or replacements of such policy which are issued at the same **Bodily Injury** Liability limits. If you decide to select another option at some future time, you must let the Company or your agent know in writing.

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML



A
I
G

O
L
0
3
:
B
e
s
s

1

7
/
3
1
/
2
0
1
7

* The term Uninsured Motorist includes Underinsured Motorist when and to the extent provided by the primary policy.

Signed:
(Applicant or **Named Insured**)

Date:

If the **Insured** has chosen to elect Uninsured Motorists coverage, it is agreed that in Section V, Exclusions, Exclusion C, is hereby deleted in its entirety and replaced by the following:

C.  Any obligations of the *Insured* under a "No-Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

All other terms and conditions of this policy remain unchanged.

Electronically Filed 07/27/2017 16:12 /  / CV 17 883684 / Confirmation Nbr. 1130748 / CLJME

AUTHORIZED REPRESENTATIVE

A
I
G

O
L
0
3
:
s
e
s
s

1
7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 11

This endorsement, effective 12:01 AM: February 28, 2001

Forms a part of policy no.: BE    7409379

Issued to:  PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH.PA.

## State of Louisiana

*This form was promulgated pursuant to LRS 22§1406.D.(1)(a)(ii). This form may not be altered or modified.*

## Uninsured/Underinsured Motorist Bodily Injury Coverage Form

**Uninsured/Underinsured Motorists Bodily Injury Coverage**, referred to as **"UMBI"** in this form, is insurance which pays persons insured by your policy who are injured in an accident caused by an owner or operator of an uninsured or underinsured motor vehicle.

*By law, your policy will include UMBI Coverage at the same limits as your Bodily Injury Liability Coverage unless you request otherwise. If you wish to reject UMBI Coverage, select lower limits of UMBI Coverage, or select Economic-Only UMBI Coverage, you must complete this form and return it to your insurance agent or insurance company. (Economic-Only UMBI Coverage may not be available from your insurance company. In this case, your company will have marked options 3 and 4 below as "Not Available.")*

### UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE

You may select one of the following UMBI Coverage options (initial only one option):

1. _____     **I select UMBI Coverage** which will compensate me for my economic and non-economic losses with
   Initials       the same limits as my Bodily Injury Liability Coverage.

   **Economic losses** are those which can be measured in specific monetary terms including, but not limited to, medical costs, funeral expenses, lost wages, and out of pocket expenses.

   **Non-economic losses** are losses other than economic losses and include, but are not limited to, pain, suffering, inconvenience, and mental anguish.

2. _____     **I select UMBI Coverage** which will compensate me for my economic and non-economic losses with
   Initials       limits lower than my Bodily Injury Liability Coverage limits:
   $_____ each person        $ _____ each accident

3. _____     **I select Economic-Only UMBI Coverage** which will compensate me only for my economic losses
   Initials       with the same limits as my Bodily Injury Liability Coverage.

4. _____     **I select Economic-Only UMBI Coverage** which will compensate me only for my economic losses
   Initials       **with limits lower** than my Bodily Injury Liability Coverage limits:
   $_____ each person        $ _____ each accident

5. _____     **I do not want UMBI Coverage.** I understand that I **will not be compensated through UMBI**
   Initials       **coverage** for losses arising from an accident caused by an uninsured/underinsured motorist.

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

A
I
G

O
L
0
3
:

## SIGNATURE

The choice I made by my initials on this form will apply to all persons insured under my policy. My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.

S
e
s

7
/
3
1
/
2
0
1
7

_____
Named Insured or Legal Representative (Please Print)

Policy Number

_____
Signature of a Named Insured or Legal Representative

Date

_____
Company Name

*Authorized Representative*
*or Countersignature (In States Where Applicable)*

A
I
G

O
L
0
3
:
S
e
s
s

1

7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 12

**This endorsement, effective 12:01 AM:**  February 28, 2001

**Forms a part of policy no.:**  BE    7409379

**Issued to:**  PMD GROUP INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## NEW HAMPSHIRE UNINSURED MOTORISTS COVERAGE*

### OPTION FORM

I.      In keeping with the provisions of the laws of my state, I have been offered the opportunity to:

   1.   Elect a limit of coverage which is equal to the Limits of Insurance on this policy.

   2.   Completely reject Uninsured Motorists coverage on this policy.

II.     I hereby indicate my choice below.

In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

   1. ☐   Coverage desired at a limit equal to the Limits of Insurance.

   2. ☐   Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage**. This rejection shall be binding upon every **Insured** and shall apply to this policy and to all renewal or policy replacements.

The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

_____

Signature of Applicant or **Named Insured**

_____

Date



Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

62413 (4/95)                          Page 1 of 2

It is agreed that If the **Insured** has chosen to elect Uninsured Motorists coverage, in Section V, Exclusions, Exclusion C is hereby deleted in its entirety and replaced by the following:

C.      Any obligations of the **Insured** under a "No-Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

62413 (4/95)                        Page 2 of 2

A
I
G

O
L
0
3
:
S
e
s
s

1

7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 13

**This endorsement, effective 12:01 AM:**  February 28, 2001

*Forms a part of policy no.:*  BE      7409379

**Issued to:**  PMD GROUP INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

<u>TENNESSEE UNINSURED MOTORISTS COVERAGE</u>*

OPTION FORM

I.  In keeping with the provisions of the laws of my state, I have been offered the opportunity to:

    1.  Elect a limit of Uninsured Motorists coverage which is equal to the Limits of Insurance on this policy.

    2.  *Elect a limit of Uninsured Motorists coverage which is lower than the Limits of Insurance on this policy.*

    3.  Completely reject Uninsured Motorists coverage on this policy.

II.  I hereby indicate my choice below. (1,2 or 3)

    In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

    1.  Coverage desired at a limit equal to the Limits of Insurance.

    2.  Coverage desired at a limit lower than the Limits of Insurance as indicated below:

        LIMIT OPTIONS:

    3.  Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage**. This rejection shall be binding upon every **Insured** and shall apply to this policy and to all renewal or policy replacements.

*  The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

Signature of Applicant or **Named Insured**   /   Date

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

AIG OL03:sess17/31/2017

If the **Insured** has chosen to elect Uninsured Motorists coverage, then it is agreed that in Section V, Exclusions, Exclusion C is hereby deleted in its entirety and replaced by the following:

C.    Any obligations of the **Insured** under a "No-Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

62452 (4/95)                    Page 2 of 2

A
I
G

O
L
0
3
:
s
e
s
s

1

7
/
3
1
/
2
0
1
7

**ENDORSEMENT No. 14**

This endorsement, effective 12:01 AM:  February 28, 2001

Forms a part of policy no.:  DE    7409379

Issued to:   PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

### COMMERCIAL UMBRELLA

### VERMONT UNINSURED MOTORISTS COVERAGE*

Exclusion C of this policy is hereby deleted in its entirety and replaced by the following:

C.     Any obligation of the **Insured** under a "No Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists Coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

### OPTION FORM

I.     In keeping with the provisions of the laws of Vermont, I have been offered the opportunity to:

   1.   Elect a limit of **Bodily Injury** Uninsured Motorists coverage which is equal to the Limits of Insurance on this policy.

   2.   Elect a limit of *Bodily Injury* Uninsured Motorists coverage which is lower than the Limits of Insurance on this policy.

   In both of the above options, the **Property Damage** Uninsured Motorists Limit under this policy shall be $10,000.

II.     I hereby indicate my choice below (1 or 2).

   In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal and the **Property Damage** Uninsured Motorists limit on your primary policy must be $10,000. If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

   1.   (  ) Coverage desired at a **Bodily Injury** limit equal to the Limits of Insurance.

   2.   (  ) Coverage desired at a **Bodily Injury** limit lower than the Limits of Insurance.

      LIMIT  OPTIONS

         (  )



Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

III. Solely as respects the coverage provided by this endorsement, Exclusion D. 1 is deleted.

' The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

_____

Signature of Applicant or **Named Insured**

All other terms and conditions of this policy remain unchanged.

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1140248 / CLJML

AUTHORIZED REPRESENTATIVE

59264 (05/94)                                 Page 2 of 2

A
I
G

O
L
0
3
:
s
s
s
1

7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 15

This endorsement, effective 12:01 AM:  February 28, 2001

*Forms a part of policy no.:*  BE    7409379

Issued to:  PMD GROUP INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

*Commercial Umbrella Policy*

**CrisisResponse**^SM **and Excess Casualty CrisisFund**^SM

**(Advancement of CrisisResponse Costs during a Crisis Management Event and
Crisis Communications Management Insurance)**

---

### Additional Declarations

Item 1.  **CrisisResponse Sublimit of Insurance:** $250,000    **Each Crisis Management
Event And Aggregate**

Item 2.  **Crisis Management Limit of Insurance:** $50,000    **Each Crisis Management
Event And Aggregate**

Item 3.  **Premium:**    Included

---

This policy is amended to provide for Advancement of **CrisisResponse Costs** during a **Crisis
Management Event** and Crisis Communications Management Insurance pursuant to the terms,
definitions, conditions and exclusions set forth below:

| I.    **INSURING AGREEMENTS-CrisisResponse and Excess Casualty CrisisFund** |

The following insuring  agreements section is added to this policy for the purpose of the coverage
provided by this endorsement:

A.    **Advancement of CrisisResponse Costs during a Crisis Management Event**

We will advance on behalf of the **Named Insured CrisisResponse Costs** that may be
associated with damages covered by this policy arising from a **Crisis Management Event**
first commencing during the Policy Period, up to the amount of the **CrisisResponse
Sublimit of Insurance.**

We will advance **CrisisResponse Costs** that may be associated with damages covered by
this policy directly to third parties.

B.    **Crisis Communications Management Insurance**

We will pay on behalf of the **Named Insured Crisis Management Loss** arising from a
**Crisis Management Event** first commencing during the Policy Period, up to the amount
of the **Crisis Management Limit of Insurance.**

Electronically Filed 07/27/2017 16:12 /  / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

A
I
G

O
L
0
3
:
S
e
s
1
7
/
3
1
/
2
U
1
7

C.    A **Crisis Management Event** shall first commence at the time during the Policy Period when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and shall end at the earliest of the time when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

D.    There shall be no Retained Limit applicable to **CrisisResponse Costs** or **Crisis Management Loss**. We shall pay such **CrisisResponse Costs** or **Crisis Management Loss** from first dollar, subject to the other terms and conditions of this endorsement.

## II.   LIMITS OF INSURANCE

The following provisions are added to Section III. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A.    The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **CrisisResponse Sublimit of Insurance** shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B.    The **Crisis Management Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **Crisis Management Limit of Insurance** shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C.    We will have no obligation to advance **CrisisResponse Costs** or to pay **Crisis Management Loss** from the earliest of the time when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

## III.   DEFINITIONS

The following definitions are added to Section IV. Definitions for the purpose of the coverage provided by this endorsement:

A.    **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the Named Insured, in the absence of **Crisis Management Services**, has reasonably been associated with or may be associated with:

1.    damages covered by this policy that are in excess of the Retained Limit applicable to such damages; and

2.    significant adverse regional or national media coverage.

**Crisis Management Event** shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B.    **Crisis Management Firm** means any public relations firm or crisis management firm approved by us that is hired by the **Named Insured** to perform **Crisis Management Services** in connection with a **Crisis Management Event**. Attached to and forming a part



Electronically Filed 07/12/2017 16:32 / COMPLAINT / CV 17 883006 / Confirmation Nbr. 1116229 / CLKMG of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the **Named Insured** without further approval by us.

A
I
G

O
L
0
3
:
S
o
s
s

1

7
/
3
1
/
2
0
1
7

C.  **Crisis Management Limit of Insurance** means the Crisis Management Limit of Insurance shown in Item 2 of the Additional Declarations of this endorsement.

D.  **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event:**

   1.  Amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event;** and

   2.  Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

E.  **Crisis Management Service** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

F.  **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

   1.  Medical expenses;

   2.  Funeral expenses;

   3.  Psychological counseling;

   4.  Travel expenses;

   5.  Temporary living expenses;

   6.  Expenses to secure the scene of a **Crisis Management Event;** and

   7.  Any other expenses pre-approved by the Company.

   **CrisisResponse Costs** will not include defense costs or **Crisis Management Loss**.

G.  **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 1 of the Additional Declarations of this endorsement.

H.  **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person designated as such and scheduled by written endorsement.

| IV. | EXCLUSIONS |

The following exclusions are added to Section V. Exclusions for the purpose of the coverage provided by this endorsement:

This insurance shall not apply to any **CrisisResponse Costs** or **Crisis Management Loss** in connection with a **Crisis Management Event:**

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML



A
I
G

O
L
0
3
:
S
e
s
s
1
7
/
3
1
/
2
0
1
7

A. arising out of, based upon or attributable to the acts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B. arising out of, based upon or attributable to any pending or prior crisis, claim, or **Suit** as of the inception date of this policy;

C. arising directly or indirectly out of:

    1. any actual or alleged failure, malfunction or inadequacy of:

        a. any of the following, whether belonging to any **Named Insured** or to others:

            (1) computer hardware, including microprocessors;

            (2) computer application software;

            (3) computer operating systems and related software;

            (4) computer networks;

            (5) microprocessors (computer chips) not part of any computer system; or

            (6) any other computerized or electronic equipment or components; or

        b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph C1a of this exclusion.

        due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

    2. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or on behalf of the **Insured** to determine, rectify or test for any potential or actual problems described in Paragraph C1 of this exclusion.

## V. CONDITIONS

The following conditions are added to Section VI. Conditions for the purpose of the coverage provided by this endorsement:

A. You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

    1. how, when and where the **Crisis Management Event** is taking or took place;

    2. the names and addresses of any injured persons and any witnesses; and

    3. the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

AIG Excess Casualty Claim Department
70 Pine Street
New York, NY 10270

B.    There shall be no requirement that you obtain prior written approval from us before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by you to perform the **Crisis Management Services** has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.    Any payments for **Crisis Management Loss** or  advancement of **CrisisResponse Costs** that we make under this endorsement:

1.    shall not be deemed to be a determination of the **Insured's** liability with respect to any claim or **Suit** that results from a  **Crisis Management Event**; and

2.    shall not create any duty to defend any **Suit** or to investigate any claim arising from a **Crisis Management Event**, nor any coverage obligations under this policy.

D.    If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the **Named Insured** by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement.  This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.    In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Management Event**  has occurred, the **Named Insured** may, at its own cost, retain the services of an approved **Crisis Management Firm** and/or advance **CrisisResponse Costs**.  Provided, however, if the **Named Insured** elects to retain an approved **Crisis Management Firm** or to advance **CrisisReponse Costs**, we shall have no obligation to reimburse under this endorsement the **Named Insured**  for such costs or expenses.  The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

Authorized Representative
or countersignature (in states where applicable)



Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

A
I
G

O
L
0
3
:
S
e
e
s

1
7
/
3
1
/
2
0
1
7

### Excess Casualty Crisis Fund<sup>SM</sup>
**(Crisis Communications Management Insurance)**

*Pre-Approved Crisis Management Firms*
*as of January 10, 2000*

---

### Abernathy MacGregor Frank

<u>New York Office</u>
501 Madison Avenue
New York, NY 10022

Contact: James T. MacGregor
(212) 371-5999
(212) 593-1845 fax
jtm@abmac.com

*Emergency*
(212) 688-0926
(917) 593-1845   cell phone

Contact: Andrew H. Brimmer
(212) 371-5999
(212) 593-1845  fax
ahb@abmac.com

*Emergency*
(212) 727-9599
(917) 860-2656   cell phone

<u>Los Angeles Office</u>
611 West Sixth Street
Suite 1880
Los Angeles, CA 90017

Contact: Ian D. Campbell
(213) 630-6550
(213) 489-3443 fax
idc@abmac.com

*Emergency*
(818) 957-5650
(917) 940-3476   cell phone

---

### Edelman Public Relations Worldwide

<u>New York Office</u>
1500 Broadway
New York, NY 10036

Contact: Jon Goldberg
(212) 704-8115
(212) 704-0129 fax
jon__goldberg@edelman.com

*Emergency*
(212) 768-0550
*Operator will page contact*

Contact: Mitch Baranowski
(212) 704-4441
(212) 704-0129 fax
mitch__baranowski@edelman.com

*Emergency*
(212) 768-0550
*Operator will page contact*

*Additional United States/Canada Offices:*
  *Atlanta; Austin; Chicago; Dallas; Houston; Los Angeles; Miami; Milwaukee; Montreal; Sacramento;*
  *San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.*

*International Offices:*
  *Latin America: Buenos Aires; Mexico City; Sao Paulo*
  *Europe: Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris*
  *Asia Pacific: Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore;*
  *Sydney; Taipei*

---

### Hill & Knowlton

<u>New York Office</u>
466 Lexington Avenue
3rd Floor
New York, NY 10017

Contact: Richard C. Hyde
(212) 885-0372
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

Contact: Arthur Foster
(212) 885-0442
(212) 885-0500 fax

*Emergency*
Contact switchboard @
(212) 885-0300



## Hill & Knowlton (continued)

|  | Contact: Denise DeShane<br>(212) 885-0390<br>(212) 885-0570 fax | *Emergency*<br>Contact switchboard @<br>(212) 885-0300 |
|---|---|---|
|  | Contact: Alex Goldsmith<br>(212) 885-0467<br>(212) 885-0570 fax | *Emergency*<br>Contact switchboard @<br>(212) 885-0300 |

*Additional United States/Canada Offices:*
*Atlanta; Chicago; Detroit; Ft. Lauderdale; Houston; Irvine; Los Angeles; Pittsburgh; Montreal; Ottawa; Sacramento; San Francisco; San Juan; Tampa; Toronto; Washington, D.C.*

*International Offices:*
*Latin America: Buenos Aires; Mexico City; Sao Paulo*
*Europe, Middle East, Africa: Amsterdam; Athens; Barcelona; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Stockholm; Tallinn*
*Asia Pacific: Auckland; Beijing; Canberra; Guangzhou; Hong Kong; Kuala Lumpur; Melbourne; Shanghai; Singapore; Sydney; Taipei; Tokyo; Wellington*

## Kekst and Company

| New York Office<br>437 Madison Avenue<br>19th Floor<br>New York, NY  10022 | Contact: Ruth E. Pachman<br>(212) 521-4819<br>(212) 521-4900 fax | *Emergency*<br>Leave voice mail or<br>contact operator @<br>(212) 521-4800 |
|---|---|---|

## Kroll Associates

| New York Office<br>900 Third Avenue<br>New York, NY  10022 | Contact: Mary Jo Phillips<br>(212) 833-3246<br>(212) 644-5794 fax | *Emergency*<br>1-800-GET-KROL<br>World Wide Crisis Division<br>*24 hours/7 days* |
|---|---|---|

## Lexicon Communications Corp.

| Los Angeles Office<br>333 South Grand Avenue<br>Suite 3560<br>Los Angeles, CA  90071 | Contact: Steven B. Fink<br>(213) 346-1212<br>(213) 346-1210 fax<br>sfink@lexiconcorp.com | *Emergency*<br>Contact switchboard @<br>(213) 346-1200 |
|---|---|---|

## Robinson Lerer & Montgomery

| New York Office<br>75 Rockefeller Plaza<br>6th Floor<br>New York, NY  10019 | Contact: Michael J. Gross<br>(212) 484-6100<br>(212) 484-7411 fax | *Emergency*<br>Contact switchboard @<br>(212) 484-6100 |
|---|---|---|

## Sard Verbinnen & Co.

| New York Office | Contact: George Sard | Emergency |
|---|---|---|
| 630 Third Avenue | (212) 687-8080 | Contact switchboard @ |
| New York, NY  10017 | (212) 687-8344  fax | (212) 687-8080 |

## Sitrick and Company Inc.

| Los Angeles Office | Contact: Michael S. Sitrick | Emergency |
|---|---|---|
| 2029 Century Park East | (310) 788-2850 | (310) 319-2786 |
| Suite 1750 | (310) 788-2855  fax | 24 hours/7 days |
| Los Angeles, CA  90067 | | |

*Additional United States Offices: New York and Washington, D.C.*



A
I
G

O
L
3
:
S
e
s
s

1

7
/
3
1
/
2
0
1
7

*ENDORSEMENT No. 16*

**This endorsement, effective 12:01 AM:**  February 28, 2001

**Forms a part of policy no.:** BE    7409379

**Issued to:**  PMD GROUP INC.

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>AIRPORT/HELIPORT LIABILITY EXCLUSION</u>

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or operation of airfields, heliports, runways, hangars, buildings or other properties in connection with aviation activities.

All other terms and conditions of this policy remain unchanged.

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1180748 / CL JML

**AUTHORIZED REPRESENTATIVE**

60422 (5/94)

ENDORSEMENT No. 17

This endorsement, effective 12:01 AM:  February 28, 2001

Forms a part of policy no.:  BE    7409379

Issued to:  PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## LEAD EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury, Advertising Injury** or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption *of or exposure to lead in any form or products containing lead.*

All other terms and conditions of this policy remain unchanged.

Electronically Filed 07/27/2017 16:12 /  / CV 17 883684 / Confirmation Nbr. 1130748 / CLJMI

AUTHORIZED REPRESENTATIVE

61718 (12/94)

A
I
G

O
L
0
3
:
s
e
s
s

1
7
/
3
1
/
2
0
1
7

ENDORSEMENT No. 18

This endorsement, effective 12:01 AM:  February 28, 2001

Forms a part of policy no.:  BE    7409379

Issued to:  PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

SILICA EXCLUSION

This insurance does not apply to:

1.   **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to silica, silica products, silica fibers or silica dust;

2.   Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury**, **Property Damage**, or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to silica, silica products, silica fibers or silica dust; or

3.   Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury**, **Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury**, **Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to silica, silica products, silica fibers or silica dust.

All other terms and conditions of this policy remain unchanged.

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 AGLJML

AUTHORIZED REPRESENTATIVE

66687 (12/96)

A
I
G

O
L
0
3
:
S
e
s
s
1

7
/
3
1
/
2
0
1
7

**ENDORSEMENT No.** 19

This endorsement, effective 12:01 AM:  February 28, 2001

Forms a part of policy no.:  BE     7409379

Issued to:   PMD GROUP INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**COMMERCIAL UMBRELLA**

**OHIO AMENDATORY ENDORSEMENT**

In section VI, Conditions, Condition D, Cancellation, is hereby deleted in its entirety and replaced by the following:

D.     Cancellation/Nonrenewal/Notice Requirements For Increase In Premium

Cancellation

1.     You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.     New policies in effect for less than ninety (90) days:

We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.     Policies in effect for ninety (90) days or more and all renewal policies:

We may not cancel a policy in effect for ninety (90) days or more or any renewal policy except for one or more of the following reasons:

a.     Nonpayment of premium;

b.     Discovery of fraud or material misrepresentation in the procurement of the insurance;

c.     Discovery of willful or reckless acts or omissions on the part of the  Insured which increase any hazard insured against;

d.     The occurrence of a change in the individual risk which substantially increases any hazard insured against;

e.     Loss of or substantial decrease in applicable reinsurance.

f.     Failure of the Insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

g.     A determination by the director of insurance that the continuation of the policy would create a condition that would be hazardous to the Insured or to the public.

The notice of cancellation will be in writing, be mailed to you at your last known address, and contain all of the following:

The policy number;

The date of notice;

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML



The effective date of cancellation (Except for nonpayment of premium, the effective date of cancellation shall not be less than thirty (30) days from the date of mailing the notice. When cancellation is for nonpayment of premium, the effective date of cancellation will be no less than ten (10) days from the date of mailing the notice); and

An explanation of the reason for cancellation.

4. The policy period will end on the day and hour stated in the cancellation notice.

5. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

6. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

7. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8. The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

9. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

Nonrenewal

We shall provide at least thirty (30) days written notice of our intention not to renew the policy at its expiration date.

Notice Requirements For Increase In Premium

If we intend to condition renewal upon a substantial increase in premium, we shall mail a notice of such intention to you and to the agent of record at least thirty (30) days prior to the expiration date of this policy. If the notice is mailed less than thirty (30) days before the expiration date of the policy, your coverage then in effect remains in effect until thirty (30) days after the date of mailing the notice.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

# Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word **"Insured"** means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## Insuring Agreements

I. **Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the **Insured**, then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

II. **Defense**

A. We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

1. The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

2. Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured**.

B. When we assume the defense of any claim or suit:

1. We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

2. We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured**:

a. premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

b. premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we

Electronically Filed 07/25/2017 16:08 / / CV 17 883867 / Confirmation Nbr. 1130410 / CLJML

c. all costs taxed against the **Insured** in any claim or **suit** we defend;

57697 (6/93) (1)



d.    pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

e.    all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

f.    the **Insured**'s expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

C.    In all other instances except A. above, we will not be obligated to assume charge of the investigation, *settlement or defense of any claim made, suit brought or proceeding instituted against the Insured.* We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

III.    **Limits of Insurance**

A.    The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

1.    Insureds;

2.    Claims made or **suits** brought; or

3.    Persons or organizations making claims or bringing **suits**.

B.    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

1.    Damages included in the **Products-Completed Operations Hazard; and**

2.    Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

C.    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

D.    Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence.**

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

1.    In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

2.    In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.



The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

A
I
G

O
L
0
3
:
s
u
s
s

1
7
/
3
1
/
2
0
1
7

**E.**    Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.    The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

2.    The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured**;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

## IV.    Definitions

**A.**    **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

1.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.    Oral or written publication of material that violates a person's right of privacy;

3.    Misappropriation of advertising ideas or style of doing business; or

4.    Infringement of copyright, title or slogan.

**B.**    **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But **auto** does not include **mobile equipment.**

**C.**    **Bodily Injury** means bodily injury, sickness, disability or disease.  **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

**D.**    **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

1.    It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.    The repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

2.    Your fulfilling the terms of the contract or agreement.

**E.**    **Insured** means each of the following, to the extent set forth:

1.    The Named Insured, meaning:

a.    any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

b.    any organization newly acquired, controlled or formed by you during the policy period but only:



1) as respects Occurrences taking place after you acquire. take control or form such organization;

2) if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

3) if you give us prompt notice after you acquire. take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2. If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3. If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

4. Any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5. Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6. Any person, other than one of your employees, or organization while acting as your real estate manager.

7. Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

a. liability arising out of operations conducted by you or on your behalf; or

b. facilities owned or used by you.

8. Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

F. **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;



A
I
G

O
L
0
3
:
s
e
s
s

1

7
/
3
1
/
2
0
1
7

3.     Vehicles that travel on crawler treads;

4.     Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **a.**     power cranes, shovels, loaders, diggers or drills; or

      **b.**     road construction or resurfacing equipment such as graders, scrapers or rollers;

5.     Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **a.**     air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **b.**     cherry pickers and similar devices used to raise or lower workers;

6.     Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

      **a.**     equipment designed primarily for:

           **1)**     snow removal;

           **2)**     road maintenance, but not construction or resurfacing; or

           **3)**     street cleaning;

      **b.**     cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      **c.**     air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**H.**     **Occurrence** means:

1.     As respects **Bodily Injury** or **Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured.** All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence;**

2.     As respects **Personal Injury,** an offense arising out of your business that results in **Personal Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3.     As respects **Advertising Injury,** an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

**I.**     **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1.     False arrest, detention or imprisonment;



2.     Malicious prosecution;

3.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

J. 1. **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

    a. products that are still in your physical possession; or

    b. work that has not yet been completed or abandoned.

2. **Your Work** will be deemed completed at the earliest of the following times:

    a. When all of the work called for in your contract has been completed.

    b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

    a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    b. the existence of tools, uninstalled equipment or abandoned or unused materials.

K. **Property Damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

L. **Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

1. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

M. **Your Product** means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a. you;

    b. others trading under your name; or

    c. a person or organization whose business or assets you have acquired; and

Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

2. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

AIG OL03: sess 17/31/2017

**Your Product** includes:

1.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2.  The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

N.  **Your Work** means:

1.  Work or operations performed by you or on your behalf; and

2.  Materials, parts or equipment furnished in connection with such work or operations.

O.  **Your Work** includes:

1.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2.  The providing of or failure to provide warnings or instructions.

V.  **Exclusions**

This insurance does not apply to:

A.  Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

B.  Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

C.  Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

D.  **Property Damage** to:

1.  Property you own, rent, occupy or use;

2.  Personal property in the care, custody or control of the **Insured**.

E.  **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.  A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

F.  **Property Damage** to **Your Product** arising out of it or any part of it.

G.  **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.



57607 (6/99)                                                    (7)

H. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    1. **Your Product;**

    2. **Your Work;** or

    3. **Impaired Property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I. Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

    1. This exclusion shall not apply; and

    2. The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J. **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    1. This exclusion shall not apply; and

    2. The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K. **Personal Injury** or **Advertising Injury:**

    1. Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

    2. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    3. Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

    4. For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L. **Advertising Injury** arising out of:

    1. Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    2. The failure of goods, products or services to conform with advertised quality or performance;

    3. The wrong description of the price of goods, products or services; or


Electronically Filed 07/27/2017 16:12 / / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

    4. An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

57697 (6/93)      (8)

A
I
G

O
L
0
3
:
S
e
s
s
1
7
/
3
1
/
2
0
1
7

**M.**  **1.**  **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

  **2.**  Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

  **3.**  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

  This exclusion M. shall not apply to **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of:

  **a.**  Heat, smoke or fumes from a hostile fire;

  **b.**  The upset, overturn or collision of a motor vehicle; or

  **c.**  The **Products-Completed Operations Hazard**;

  if insurance for such **Bodily Injury**, **Property Damage** or **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such **Bodily Injury**, **Property Damage** or **Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

  As used in this exclusion:

  **a.**  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. "Waste material" includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

  **b.**  A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**N.**  **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condit ion incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**O.**  **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**.

  However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

**P.**  **1.**  **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

  **2.**  Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury**, **Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

  **3.**  Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury**, **Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury**, **Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.



Q.    **Bodily Injury** or **Personal Injury** to:

    1.    A person arising out of any:

        a.    Refusal to employ that person;

        b.    Termination of that person's employment; or

        c.    Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    2.    The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

    1.    Whether the **Insured** may be liable as an employer or in any other capacity; and

    2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

R.    **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of or by reason of:

    1.    The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

    2.    Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

    3.    Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

S.    **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

    1.    Causing or contributing to the intoxication of any person;

    2.    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    3.    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    1.    This exclusion shall not apply; and

    2.    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

T.    **Bodily Injury** or **Property Damage:**



    1.    a.    with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

A
I
G

O
L
0
3
:
S
e
e
e
1

7
/
3
1
/
2
0
1
7

1.    b.    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2.    **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

     a.    the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

     b.    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

     c.    the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3.    As used in this exclusion:

     a.    "hazardous properties" includes radioactive, toxic or explosive properties:

     b.    "nuclear material" means source material, special nuclear material or by-product material;

     c.    "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

     d.    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

     e.    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

     f.    "nuclear facility" means:

         1)    any nuclear reactor;

         2)    any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

         3)    any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

         4)    any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

     g)    "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.



AIG OLO3:sess1/7/31/2017

h) **Property Damage** includes all forms of radioactive contamination of property.

## /1. Conditions

### A. Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

### B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

### C. Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

### D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7. The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.



A I G

O L 0 3 : s e 9

1

7 / 3 1 / 2 0 1 7

**E.** Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.** Duties In The Event Of An **Occurrence**, Claim Or **Suit**

1. You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy. To the extent possible, notice should include:

   a. how, when and where the **Occurrence** took place;

   b. the names and addresses of any injured persons and witnesses; and

   c. the nature and location of any injury or damage arising out of the **Occurrence.**

2. If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved **Insured** must:

   a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

   b. authorize us to obtain records and other information;

   c. cooperate with us in the investigation, settlement or defense of the claim or **suit**; and

   d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4. No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G.** Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

**H.** Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.



**I.** Maintenance of Underlying Insurance

Electronically Filed 07/27/2017 16:12 / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

During the period of this policy, you agree:

1. To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

57697 (6/93)  (12)



AIG o L o 3 : s e s s 1 7 / 3 1 / 2 0 1 7

2. That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

4. That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**J. Other Insurance**

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K. Premium**

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**L. Prior Insurance**

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**M. Separation of Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1. As if each **Named Insured** were the only **Named Insured**; and

2. Separately to each **Insured** against whom claim is made or **Suit** brought.

**N. Subrogation**

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

Any recoveries shall be applied as follows:

1. Any interests, including the **Insured**, that have paid an amount in excess of our payment under this policy will be reimbursed first;

A
I
G
0
L
0
3
:
s
u
s
s
1
7
/
3
1
/
2
0
1
7

2.   We then will be reimbursed up to the amount we have paid; and

3.   Lastly, any interests, including the **Insured**, over which our insurance is excess, are entitled to claim the residue.

*Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the* **Insured**, *in the ratio of their respective recoveries as finally settled.*

O.   Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

P.   When Loss Is Payable

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured.**

**In Witness Whereof**, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

*Elizabeth  M. Tuck*
SECRETARY

*Susan Rivera*
PRESIDENT


Electronically Filed 07/27/2017 16:12 /  / CV 17 883684 / Confirmation Nbr. 1130748 / CLJML

UPS

Page 1 of 1

## UPS CampusShip: View/Print Label

1.  **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2.  **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3.  **GETTING YOUR SHIPMENT TO UPS**
    **Customers with a Daily Pickup**
    Your driver will pickup your shipment(s) as usual.

    **Customers without a Daily Pickup**
    Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
    Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
    Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| THE UPS STORE | THE UPS STORE | THE UPS STORE |
| 84 BEAVER ST | 82 NASSAU ST | 71 BROADWAY |
| NEW YORK ,NY 10004 | NEW YORK ,NY 10038 | NEW YORK ,NY 10006 |

FOLD HERE

